# Lane v. Commonwealth.

(Decided Oct. 30, 1934.)

B. F. DENHAM for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Cecil Lane shot and killed Basil Eubank and upon his trial under an indictment charging him with the crime of willful murder he was convicted of manslaughter and his punishment fixed at imprisonment in the state penitentiary for a term of twenty-one years.

On this appeal he complains chiefly of the severity of the punishment. The record is remarkably free of errors, even the minor ones that usually occur in the course of a trial of this nature. The substance of appellant's argument for a reversal of the judgment appears in this paragraph found in the brief filed in his behalf:

"The verdict as will be seen from the record, was 21 years in the penitentiary, and we are of the opinion that when the court has read the evidence in this case [which is very short], it will come to the conclusion that it was much too severe, and must have been the result of prejudice or passion."

Lane and Eubank lived in the same neighborhood and were rivals for the affections of Miss Roxie Brooks. Bad feeling had existed between them for some time prior to the killing. On the night of March 18, 1932, six young men, including appellant and the deceased, met at the home of Burley Brooks, father of Roxie Brooks. Several witnesses for the commonwealth testified that a few words passed between Lane and Eubank and that Lane shot at Eubank three times while the latter was on a davenport.

Appellant made a feeble effort to show that he fired in self-defense, but the overwhelming weight of evidence is to the effect that Eubank was making no demonstration toward appellant when he was shot, but was sitting quietly on the davenport six or eight feet from where appellant was standing. It is patent from the testimony that Lane was angry because Miss Brooks was sitting on the davenport near Eubank and refused to leave when he called her. Eubank was unarmed. There was some evidence of threats by each against the other and Newman Clarkson testified that "on Wednesday before the shooting took place Saturday night Cecil said he was going to shoot Basil that Saturday night if he crossed his path." It is manifest from the evidence that appellant shot and killed Eubank with little or no provocation and his complaint that the punishment assessed against him is excessive and was prompted by passion and prejudice on the part of the jury is groundless.

The jury imposed the maximum punishment for manslaughter, but it should be remembered that the fixing of punishment for crime is a legislative, and not a judicial, function, and when the punishment assessed is within the range prescribed by statute, this court cannot adjudge it to be excessive, or disproportionate to the nature of the offense, unless the law itself is subject to that objection and is in violation of constitutional provisions. Mitchell v. Commonwealth, 195 Ky. 819, 243 S. W. 1028. While it is argued that the verdict is excessive, what is really intended by the argument is that it is flagrantly against the evidence. This court will not interfere with the finding of the jury upon disputed questions of fact in a criminal case unless it affirmatively appears that their verdict is so contrary to the evidence as to make it appear that it was the result of passion or prejudice. Black v. Commonwealth, 154

Ky. 144, 156 S. W. 1043. The jury is the judge of the credibility of the witnesses and what the facts of the criminal case are and its verdict should not be lightly set aside. A consideration of the facts and circumstances heretofore detailed clearly indicates that there is no reason to set aside the verdict upon the ground that it is flagrantly against the evidence.

A reference was made in the brief filed in appellant's behalf to an incident which occurred during the trial which, it is argued, tends to show that appellant failed to receive a fair trial. The incident occurred during the cross-examination of Hancel Jackson. He was asked two questions which, with their answers, were as follows:

"1. Is that all you know? A. Yes sir.

"2. You a brother to Paul Jackson? A. I suppose so."

Immediately following the last answer this appears in the transcript of evidence:

"Commonwealth attorney said 'You may go then.' Crowd laughed. Attorneys for the defense made a motion to dismiss the jury because the people in the audience laughed, which motion the court overruled, and admonished the crowd."

We find nothing tending to indicate that the laughter showed bias or prejudice on the part of the audience or that the conduct of the crowd could possibly have had any influence on the jury.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.