## Pulliam v. Commonwealth.

(Decided December 11, 1925.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Imposition of Maximum Punishment for Second Violation for Possession of Liquor Held Proper.—Imposition of maximum punishment authorized for second conviction under Rash-Gullion Act, section 2, for possession of liquor in violation of section 1, is not reversible as so excessive as to indicate passion

or prejudice by jury, on ground that possession is least of several offenses denounced by statute, since all violations of prohibition statute are treated by it alike, and authorizes jury in its discretion to inflict same punishment in any case.

2. Intoxicating Liquors—State Statute Recognizing no Distinction Between Possession of Liquor and Other Violations of Law Held Not Invalid Therefor.—Rash-Gullion Act, section 1, making no distinctions between possession of liquor and other violations of act, is not rendered invalid by fact that Congress in Volstead Act (U. S. Comp. St. Ann. Supp. 1923, section 10138¼, et seq.) recognized such distinctions.

3. Criminal Law—Limits of Punishment, though Same for Offenses Involving Different Degrees of Moral Turpitude, do Not Warrant Interference with Exercise by Jury of Discretion Within Limits Prescribed.—Limits of punishment prescribed by Rash-Gullion Act, sections 1, 2, for violation of liquor laws, are limitations solely upon discretion of jury, and fact that limits are same for possession of liquor as for its sale, transportation, or manufacture, which, even if involving different degrees of moral turpitude, does not give courts power to interfere with exercise by jury of its discretion within limits prescribed, such rule being applicable not only to statutes dealing with single offense, but those treating alike several offenses of same general character.

4. Intoxicating Liquors—Evidence Held Sufficient to Take Case to Jury and to Sustain Verdict of Guilty of Possession of Liquor.— Evidence that a bottle of whiskey was found under bed in defendant's room, that defendant was drunk at time, that he had been previously convicted of same act, and that his reputation in this respect was bad, was sufficient to take case to jury, in prosecution for possession of liquor, and if unexplained was sufficient to sustain a verdict of guilty.

5. Criminal Law—Verdict of Guilty Not Disturbed Because Defendant's Evidence is to Contrary.—A verdict of guilty cannot be said to be unsupported by or contrary to evidence, simply because defendant's evidence would have sustained a contrary conclusion.

6. Criminal Law—Failure of Court to Define Unlawful Possession in Prosecution for Possessing Liquor Held Not Error.—In prosecution for possession of liquor, failure of court to define unlawful possession was not reversible error, where the only question involved was whether possession necessarily unlawful was proved.

7. Intoxicating Liquors—Warrant Directing Search of Farm, Houses, Buildings, and Other Places Thereon Held Sufficient to Authorize Search of Residence.—A warrant directing officer to search "said farm and houses, buildings, and other places thereon," is sufficient to authorize search of residence, though "residence" was omitted.

8. Intoxicating Liquors—Testimony that Defendant was Not Guilty of Previous Sale of Liquor to Witness Held Incompetent.—Statements of absent witness set forth in affidavit for continuance, that defendant was not guilty of previous sale of liquor to witness

is incompetent to discredit state's evidence of defendant's bad reputation in violating liquor law, or for any other purpose, and hence such statements were properly excluded.

C. W. WELLS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE—Affirming.

Appellant was accused and convicted of possessing moonshine whiskey in violation of the first section of the Rash-Gullion Act (Ky. Statutes, 2554a-1), and a previous conviction of a like offense against the same act. His punishment was fixed at confinement in the penitentiary for three years, which is the maximum punishment authorized for a second conviction by section 2 of the act (Ky. Statutes, 2554a-2).

The chief reliance for reversal is that the verdict is so excessive as to indicate passion or prejudice upon the part of the jury. It is argued this is so because of the infliction of the maximum penalty authorized for any second violation of the act, although appellant was convicted in each instance of merely illegal possession, and that this is the least of the several offenses denounced and punished by the same sections.

The assumption that an illegal possession is a lesser offense or an offense of lesser degree than an illegal sale, transportation or manufacture of intoxicating beverage, upon which this argument is based, is refuted by the statute itself, since it treats all alike and authorizes the jury in its discretion to inflict the same punishment in any case. The fact that Congress in the Volstead Act recognized such a distinction is clearly not sufficient to render our statute invalid, as is expressly admitted. That reason may or not dictate such a distinction is therefore likewise conceded to be a matter for legislative rather than judicial consideration, as clearly it is. Lakes v. Goodloe, Judge, 195 Ky. 240, 242 S. W. 632.

It, however, is argued that such a distinction does in fact exist and necessitates an assumption that the legislature intended and presumed that the jury always would graduate the punishment within the limits prescribed in accordance with the degree of the offense. But

even if we concede as much it nevertheless is true that the limits prescribed are limitations solely upon the discretion of the jury, and the fact that the limitation is the same for offenses involving somewhat different degrees of moral turpitude clearly does not confer upon the courts any power to interfere with the exercise of its discretion by the jury within the limits prescribed therefor. We expressly have so held in several cases. Cloninger v. Commonwealth, 191 Ky. 841, 231 S. W. 535; Todd, et al. v. Commonwealth, 195 Ky. 379, 242 S W. 360; Mitchell v. Commonwealth, 195 Ky. 819, 243 S. W. 1028; Urban v. Commonwealth, 196 Ky. 775, 245 S. W. 511; Galloway, &c. v. Commonwealth, 209 Ky. 501, 273 S. W. 63

Not only are we still of the opinion that such holding is sound but we are unconvinced as is the insistence that its application should be confined to statutes which deal with a single offense, as was the fact in each of those cases, but denied where as here a single statute treats alike several offenses of the same general character but differing somewhat in degree  Hence the judgment cannot be reversed upon the ground that the verdict is excessive.

It also is urged that the verdict is not supported by the evidence. Officers searched appellant's residence under a search warrant. He met them at the door and admittedly was very drunk. Under the bed in his bedroom they found a half pint bottle containing moonshine whiskey. The Commonwealth also proved the former conviction of appellant under the same act; that his reputation in this respect was bad and that when the bottle was found he said if he had known they were going to get it he would have drunk it up before they got there. That this evidence was sufficient to carry the case to the jury and if unexplained to sustain the verdict is not denied. It is insisted, however, that the uncontradicted evidence for the appellant shows conclusively that this liquor belonged to one Payne, appellant's hired hand, and although found under appellant's bed it was nevertheless in Payne's and not appellant's possession. To this we can not agree. The evidence for the defendant, although uncontradicted, did not prove conclusively or otherwise that the whiskey when found under appellant's bed was in the possession of Payne, although he was in the room frequently, and the very most that can be said of it is that it was sufficient to have warranted such an inference, and

merely contradictory therefore of the contrary inference supported by the testimony for the Commonwealth that the possession was that of appellant. Obviously under such circumstances the question of possession was one of fact for the jury and its verdict in accordance with a reasonable inference from the evidence for the Commonwealth can not be said to be unsupported by or contrary to the evidence simply because the defendant's evidence would have sustained a contrary conclusion.

Another insistence is that the court erred in failing to define "unlawful possession" as denounced by the statute and used in the instructions.

It has been held reversible error in several cases not to define unlawful possession. Addington v. Commonwealth, 200 Ky. 290, 254 S. W. 889; Sizemore v. Commonwealth, 202 Ky. 273, 259 S. W. 337; Skidmore v. Commonwealth, 204 Ky. 451, 264 S. W. 1053. But an examination of those cases will show that this is true only where because of peculiar circumstances a proven possession may or not be unlawful and not where as here the only question for decision is whether a possession necessarily unlawful was proven. In the Addington case the jury after submission manifested confusion and asked to be informed as to the legal effect of proven facts upon the question of posesssion, and it was held that "while ordinarily it is not necessary to instruct a jury as to the meaning of such common words or phrases as 'possession' or 'having in possession,' it was error not to do so under the circumstances since without such an instruction the jury had to decide a question of law." In each of the other cases, *supra*, the instruction was required only because the evidence presented for decision the question of whether the mere handling of a bottle or jug belonging to another, for the purpose of taking a drink therefrom, was an illegal possession.

No such question was present here, but only whether a bottle containing whiskey found in appellant's house under his bed belonged to and was in his possession or was in the possession and belonged to another. We are therefore of the opinion that there was no necessity under the evidence in this case for the court to define unlawful possession.

Another insistence is that the search warrant and affidavit therefor did not authorize a search of appel-

lant's residence because the word "residence" is not used therein. The warrant, however, directs the officer to search "said farm and the houses, buildings and other places thereon," and this, we think, clearly covered the residence as well as other houses and buildings on the farm.

The final contention is that the court erred in refusing to permit appellant to introduce as evidence the statements, which he alleged, in an affidavit filed for continuance, an absent witness would make if present.

Waiving the question of diligence raised by the Commonwealth, we are yet of the opinion the court did not err in rejecting the offered evidence because of its incompetency. The affidavit alleged that the absent witness, Charles Baxley, if present would testify that on or about the 22nd day of December, 1924, and near the residence of appellant some one sold to him whiskey and stated that his name was Pulliam; that Baxley had never met and did not know the defendant; that a warrant was issued against appellant charging him with making the sale to Baxley, but that when Baxley met appellant he discovered and stated that it was not appellant who sold him the whiskey; that thereupon the county attorney dismissed the warrant.

It is insisted that this was competent to explain and discredit the Commonwealth's evidence of appellant's bad reputation with reference to violations of the Rash-Gullion Act, but that it was incompetent for that or any other purpose seems to us too clear to warrant discussion.

Perceiving no error in the record prejudicial to appellant's substantial rights, the judgment must be and is affirmed.